Entered on Docket
March 10, 2014
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: March 10, 2014

THOMAS E. CARLSON U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CARLOS MIGUEL COLLAZO,<br><br>                  Debtor.<br><br>KARL ELLER and RED RIVER RESOURCES, INC.,<br><br>                  Plaintiffs,<br>    vs.<br>CARLOS MIGUEL COLLAZO,<br><br>                  Defendant. | Case No. 12-30217 TEC<br>Chapter 11<br><br><br><br>Adv. Proc. No. 12-03060 |

**MEMORANDUM DECISION RE MOTION FOR SUMMARY JUDGMENT AND DISMISSAL**

On December 20, 2013, this court held a hearing on Defendant Carlos Collazo's motion for summary judgment and to dismiss for failure to state a claim upon which relief may be granted. Defendant Carlos Miguel Collazo (Collazo) appeared in pro per. Michael H. Ahrens appeared for Plaintiffs Karl Eller (Eller) and Red River Resources, Inc. (Red River) (collectively the Eller Parties).

MEMORANDUM DECISION RE MOTION FOR
SUMMARY JUDGMENT AND DISMISSAL     -1-

Upon due consideration, and for the reasons set forth below, the Collazo motion is granted in part and denied in part. Summary judgment is granted as follows: the Settlement Agreement limits Collazo's post-bankruptcy personal liability to the Eller Parties for pre-settlement acts to $3 million, irrespective of whether the Eller Parties prevail in their denial-of-discharge action. Summary judgment is denied as follows: the Settlement Agreement addresses only pre-Settlement Agreement monetary claims between the parties and does not bar the Eller Parties from seeking to deny Collazo's discharge. The Rule 12(b)(6) motion to dismiss the denial-of-discharge claims is granted with leave to amend.

**BACKGROUND**

The Eller Parties and Carlos Collazo were involved in two pre-petition lawsuits that arose out of the Eller Parties' investment in companies controlled by Collazo. Red River sued Collazo, Mariner Systems, Inc. (Mariner), and Xybersource, Inc. for fraud, breach of contract, and securities fraud in the Federal District Court in Arizona (the Federal Litigation). Eller sued Collazo, Mariner, and Marsys Digital, LLC for fraud and diversion of assets in Arizona state court (the State-Court Action).

Collazo filed a chapter 11 petition in this court in January 2012, staying both the Federal Litigation and the State-Court Action. This court appointed a chapter 11 trustee on August 10, 2012. The Eller Parties timely filed the present action in which they seek to have this court determine that any liability arising from the conduct alleged in the Federal Litigation and the State-Court Action is excepted from any discharge that Collazo might receive through the bankruptcy (the Discharge Matter).

Collazo, Red River, and Eller executed a written agreement on June 15, 2013 (the Settlement Agreement). The motion currently before this court turns upon the interpretation of that Settlement Agreement.

Although the terms of the Settlement Agreement are discussed in detail below, it is useful to summarize its terms here. The agreement purports to cover all existing claims against Collazo by the Eller Parties. All such claims were released, except for the following "Retained Claims:" (1) a $15 million unsecured claim against Collazo's bankruptcy estate; and (2) a $3 million non-dischargeable debt against Collazo personally.[1] Collazo agreed to cause his parents to convey their residence in Miami (the Residence) to the Eller Parties free and clear of all liens and encumbrances. Collazo represented and warranted that he had no interest in the Residence. That Collazo had no interest in the Residence is important, because if the Residence is property of his bankruptcy estate, other creditors of the estate would be entitled to share in the proceeds from its sale.

After the Settlement Agreement was signed, the parties promptly began to implement it. Red River secured a judgment against Collazo in the Federal Litigation in the amount of $3 million, the liability that Collazo agreed was to be non-dischargeable. Collazo's parents conveyed the Residence to the Eller Parties' nominee on June 28, 2013.

Then Collazo did something that was not contemplated in the Settlement Agreement. On July 10, 2013, Collazo gave his parents a

---

[1] The parties released all unknown claims pursuant to California Civil Code 1542. The Settlement Agreement indicates that it embodies the entire agreement between the parties.

**MEMORANDUM DECISION RE MOTION FOR**
**SUMMARY JUDGMENT AND DISMISSAL**       -3-

promissory note in the amount of $1.3 million (the Note), which he said was to compensate them for transferring the Residence to the Eller Parties. On July 23, 2013, Collazo filed an action against Mariner in the San Francisco Superior Court, seeking indemnification for liabilities he incurred (i.e. the Note) as a result of duties he performed for Mariner (the Indemnity Action).

The Eller Parties allege that the Note and the Indemnity Action allegedly harmed them in the following manner. The Trustee had sold Collazo's shares in Mariner to a third party in May 2013. The Note and Indemnity Action caused Trustee and Mariner to assert that the Residence was property of the estate that must be shared with other creditors. The claim that the Residence was property of the estate allegedly hampered the Eller Parties in negotiating a global settlement agreement with the Trustee and other creditors, with the result that the Eller Parties were forced to accept a smaller distribution on their claims against the estate.[2]

On October 14, 2013, the Eller Parties filed an amended complaint in the present action. The amended complaint asserts three new causes of action in which the Eller Parties seek to have this court deny Collazo's discharge under section 727 of the Bankruptcy Code on the basis of his failure to disclose the Note and Indemnity Action.

In the prayer for relief in the amended complaint, the Eller Parties indicate that they seek a determination that the entire amount set forth in their proofs of claim ($18 million) be excepted from discharge and/or be enforceable against Collazo upon denial of his discharge.

---

[2] Collazo was not a party to this second settlement.

**MEMORANDUM DECISION RE MOTION FOR SUMMARY JUDGMENT AND DISMISSAL** -4-

In the motion presently before the court, Collazo seeks summary judgment determining that the only claim the Eller Parties retain against him personally is the $3 million non-dischargeable claim he stipulated to in the Settlement Agreement. Collazo seeks summary judgment on the section 727 denial-of-discharge claims on two grounds. He first contends that the claims are barred by the language in the Settlement Agreement in which the Eller Parties agree to "support an exit from the Collazo bankruptcy." Collazo also contends that the denial-of-discharge claims are moot because he submitted declarations demonstrating that he rescinded the Note and dismissed the Indemnity Action in August 2013. In the alternative, Collazo seeks dismissal of the denial-of-discharge claims on the basis that the allegations in the amended complaint are insufficient to state a valid claim for relief under section 727.

**DISCUSSION**

**I. The Non-Dischargeability Claim**

I determine that the only pre-settlement claim preserved against Collazo personally is the $3 million non-dischargeable debt.

The Settlement Agreement addresses the claims against Collazo asserted by both Eller and Red River. The first paragraph identifies the parties as follows:

> This Settlement Agreement ("Agreement") is hereby entered into between Karl Eller and Joan S. Eller, husband and wife ("Eller"), Red River Resources, Inc., an Arizona corporation ("RRR") . . . (collectively the "<u>Eller Parties</u>"), and Carlos Collazo ("CMC") . . . (collectively the "<u>Individual Defendants</u>"), on the other hand, effective as of June 15, 2013.

(emphasis in original). Thus, the "Eller Parties" include both

Karl Eller and Red River, the Plaintiffs in the current action. The Individual Defendants include Debtor Carlos Collazo, the Defendant in the current action.

The release executed by the parties provides for the release of *all* claims the Eller Parties had against Collazo as of the settlement date, except for "Retained Claims."

> Each of the **Eller Parties** . . . hereby **release** and forever discharge each of **the Individual Defendants** . . . **from all claims**, causes of action, obligations, costs, damages, demands, or losses that it has or may have against the Defendant Released Parties as of the date hereof . . . but **excepting** any obligations, covenants, or representations arising out of the Settlement Agreement or claims or judgments specifically contemplated therein to survive the Closing, including **the Retained Claims** (all such defined terms having the meanings specified in the Settlement Agreement).

(emphasis added).

"Retained Claims" are defined in the Settlement Agreement as follows:

> The Eller Parties and [Collazo], through their respective counsel who are also instructed to comply, shall cooperate to the extent reasonably possible to accomplish the following: (a) [Collazo] shall stipulate, and support a motion to the Court at an appropriate time determined by the Eller Parties, to allow unsecured claims in favor of the Eller Parties (consistent with claims already filed in the Discharge Matter) in the aggregate amount of not less than $15,000,000 (the "<u>Claim Amount</u>") allocated as specified by the Eller Parties, and (b) [Collazo] shall stipulate that $3,000,000 of such claims shall be represented by a Judgment (the "<u>$3MM Judgment</u>") entered in the Federal Litigation and stipulated and subject of a motion to the Court in the BK Case to be nondischargeable under 11 U.S.C. 523(a)(2) . . . . The Eller Parties will otherwise support an exit from the Collazo bankruptcy or consent to plan consistent with this Agreement. The Parties recognize that the consent of the Trustee in the [Collazo] BK Case may be required to fully accomplish the intention of the Parties to have claims allowed in the amounts and character specified in this Section 3, and the Parties shall use their best efforts to obtain such consent . . . . The Parties recognize and agree that the Eller Parties may seek a Claim amount in excess of $15,000,000, but [Collazo] shall not be required to support any excess amount.

MEMORANDUM DECISION RE MOTION FOR
SUMMARY JUDGMENT AND DISMISSAL      -6-

Case: 12-03060   Doc# 67   Filed: 03/10/14   Entered: 03/10/14 16:46:45   Page 6 of 17

(emphasis in original).

Collazo does not dispute that the $3 million claim identified in clause (b) of the definition of Retained Claims is preserved as a personal claim against him.

Collazo does dispute that the unsecured claim identified in clause (a) of the definition of Retained Claims is preserved against him personally. Unless clause (a) includes claims against Collazo personally, the Eller Parties released all claims against Collazo in excess of $3 million, because the Eller Parties released all pre-settlement claims other than Retained Claims

I determine that the unsecured claim identified in clause (a) of the definition of Retained Claims is not a claim preserved against Collazo personally. In making this determination, I make and rely upon the following subsidiary findings and conclusions.

(1) The definition of Retained Claims relies upon the terms "unsecured claim," "allow," and "Judgment . . . to be nondischargeable under 11 U.S.C. § 523(a)(2)." These terms have a well understood meaning to bankruptcy lawyers. In this regard, it is worthy of note that Eller Parties acknowledge that the language of the Settlement Agreement was negotiated solely by the attorneys involved, without any participation by the principals. Plaintiffs' opposition brief at 2-3.

(2) An "unsecured claim" refers to a claim against the bankruptcy estate. The term "unsecured" reflects the priority that the claim is accorded in distribution of assets of the estate. It is used to refer to a claim that is not secured by specific collateral (which would be referred to as a secured claim) and that is not entitled to any priority over other unsecured claims (which

would be referred to as a priority unsecured claim). Whether a claim is unsecured has no relevance to whether the claim remains a personal liability of the debtor following bankruptcy.

(3) "Allow" refers to the recognition of the validity of a claim against the estate. Only claims against the estate are "allowed." The term "allow" is not used to refer to the determination that a debt survives as a personal liability of the debtor following bankruptcy.

(4) A "nondischargeable" claim refers to a claim that will remain a personal liability of the debtor following the bankruptcy even if the debtor receives a discharge of debts.

(5) That the unsecured claim specified in clause (a) of the definition of Retained Claims is not preserved as a claim against Collazo personally is further supported by the fact that the definition states that Collazo is required to "support" the allowance of the claim and acknowledges that Collazo and the Eller Parties may not by themselves be able to provide for the allowance of the claim. Collazo is unable to stipulate to a claim against the estate, because the allowance of such a claim affects the rights of other creditors, whose dividends would be reduced by the allowance of such a claim. Collazo was fully able to stipulate to the preservation of claims against himself personally. The definition of Retained Claims, however, does not state that Collazo agrees to the preservation of a $15 million claim against him personally, nor does it contain any suggestion that the unsecured claim is preserved except in the usual sense as a claim against the estate.

(6) That the purpose of preserving the $15 million unsecured

**MEMORANDUM DECISION RE MOTION FOR
SUMMARY JUDGMENT AND DISMISSAL**      -8-

Case: 12-03060    Doc# 67    Filed: 03/10/14    Entered: 03/10/14 16:46:45    Page 8 of 17

claim is to secure for the Eller Parties a large distribution from the assets of the bankruptcy estate, not from the post-bankruptcy assets and earnings of Collazo, is confirmed by an email sent by the Eller Parties' counsel concerning the implementation of the Settlement Agreement.

> The settlement agreement provides that [Red River] gets a $3 million judgment from the Federal case that is non-dischargeable, but that it also get an allowed $15 million claim in the bankruptcy, even though only $3 million is non-dischargeable. . . .  The $15 million claim is important because it will set the amount from which percentages of recovery will be calculated as related to other creditors for proceeds from the sale of assets (primarily Collazo's house).

Email from Keith Hendricks sent August 28, 2013.  This email was sent after the parties had executed the Settlement Agreement.  It is thus not evidence of any meaning agreed upon by the parties, but it does serve to refute the notion that the interpretation urged by Collazo differs from the subjective understanding of the Eller Parties.

(7) The Eller Parties' counsel argued at the hearing that Plaintiffs' subjective understanding of the Settlement Agreement was that it did not limit to $3 million the claims that the Eller Parties could enforce against Collazo personally.  This argument is unpersuasive because it does not conform to the objective theory of contracts, which seeks to enforce the objective understanding of the parties manifested in the words of the contract and (sometimes) the pre-formation communications between the parties.  As noted above, the parties agree that all the pre-formation discussions were conducted by email between the parties' counsel.  The only communication to address the post-bankruptcy personal liability of Collazo was the email quoted above, which stated that such

liability was to be fixed at $3 million.  Thus, the subjective understanding urged by the Eller Parties is not supported by the words of the contract or by any communications between the parties or their attorneys.  The Eller Parties do not offer any evidence that Collazo caused or knew of The Eller Parties' alleged mistake, nor did Plaintiffs seek additional time to secure such evidence under Rule 56(f).

(8) The Eller Parties note that the definition of Retained Claims includes "unsecured claims in favor of the Eller Parties **(consistent with claims already filed in the Discharge Matter)** in the aggregate amount of not less than $15,000,000." (emphasis added).  The Eller Parties contend that this "consistent with" language must be given meaning, and that its proper meaning is "Eller retained the right to assert $15 million worth of claims, albeit on an unsecured basis, consistent with claims that were already filed in this Discharge Action.  That is all Eller is doing here.  He is asserting $5 million on his Non-Discharge Complaint." Plaintiffs' opposition brief at 14.  This argument is unpersuasive.  First, the most natural meaning of the words "consistent with claims already filed in the Discharge Matter" is to identify the nature of the unsecured claims that Collazo is to help become allowed claims against the estate.  Such an interpretation affords the words sufficient meaning as not to render them surplusage.  Second, the words in question do not in any way suggest that the claims are other than unsecured claims against the estate.  The claims in question are not included among the claims that are identified in the Settlement Agreement as non-dischargeabile or preserved as personal liabilities of Collazo.

(9) I am also not persuaded by the Eller Parties' argument that the claims preserved as Collazo personally are not limited to $3 million because the Settlement Agreement did not provide for the dismissal of any of the actions pending against Collazo. The reason that the actions against Collzao were not dismissed was to avoid any argument that the Eller Parties had waived their claims against the estate. As noted above, Collazo could not by himself stipulate to claims against the estate, because the allowance of such claims affects the rights of third parties (other creditors and the trustee). That the reason for not dismissing the action was to preserve claims against the estate is made clear in the email from Eller Parties' counsel quoted above.

> We cannot have a judgment that dismisses with prejudice or in any way eliminates the larger $15 million allowed claim we intend to seek in the bankruptcy ... we can't give other creditors an argument that this judgment eliminated all claims that could be or were asserted in the bankruptcy.

Email from Keith Hendricks sent August 28, 2013.

(10) The Eller Parties also complain that in issuing the Note and filing the Indemnity Action Collazo did not implement the Settlement Agreement in good faith. Plaintiffs' opposition brief at 4-11. But the Eller Parties do not seek rescission of the Settlement Agreement, which would require them to give up both the Residence conveyed to them by Collazo's parents and the stipulated $3 million non-dischargeable judgment against Collazo. Nor do the Eller Parties offer any reason why they should be entitled to retain the benefits of the Settlement Agreement without being bound by its terms.

In summary, the language of the Settlement Agreement and

release provide that the Eller Parties released Collazo from all pre-settlement personal liability in excess of the $3 million stipulated non-dischargeability judgment. There is no occasion to determine whether any debt in excess of $3 million should be excepted from discharge, because the Settlement Agreement did not preserve any such claims against Collazo personally.

**II. Denial of Discharge**

In light of the above, the denial-of-discharge claims offer limited benefits to the Eller Parties. Those claims have no effect on Collazo's post-bankruptcy liability to the Eller Parties on pre-settlement debts; that issue was fully resolved in the Settlement Agreement through the stipulated $3 million non-dischargeable judgment and the release of all other pre-settlement debts. It is not appropriate to dismiss the Eller Parties' denial-of-discharge claims for lack of standing, however. First, the Eller Parties allege that they were harmed by Collazo's post-settlement acts. A discharge could bar those claims, because a discharge in a chapter 11 applies to all pre-confirmation debts and a plan has not yet been confirmed in this chapter 11 case. 11 U.S.C. § 1141 (d)(1)(A)(d). Second, the Eller Parties are creditors of the estate, and the statute expressly authorizes creditors to bring denial-of-discharge actions. 11 U.S.C. § 727(c)(1). Thus, it is necessary to address the merits of the Eller Parties' denial-of-discharge claims.

Collazo seeks summary judgment on the denial-of-discharge claims on the basis that the Eller Parties are barred from bringing these claims by the language in the Settlement Agreement stating that the Eller Parties agree to "support an exit from the [Collazo]

bankruptcy." This argument is unpersuasive. The Settlement Agreement addressed all of the Eller Parties' pre-settlement claims, but did not purport to resolve whether Collazo should receive a discharge, especially to the extent that a challenge to discharge is based on post-settlement conduct. In this context, the language Collazo relies upon cannot be stretched to the reach the result he seeks.

Collazo next seeks summary judgment on the denial-of-discharge claims on the basis that he promptly reversed the acts upon which those claims were based. Collazo submitted declarations demonstrating that shortly after Mariner and the Eller Parties complained about the Note and Indemnity Action, he rescinded the Note and dismissed the Indemnity Action. This argument is also unpersuasive. Collazo apparently seeks to invoke the doctrine that discharge should not be denied where the harm to the estate upon which the claim is based has been reversed pre-petition. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343-46 (9th Cir. 1986) (denial of discharge improper where debtor transfers property with intent to defraud creditors but recovers that property before petition date). It is not necessary to decide whether Adeeb could apply to the present situation, because Collazo has not to this point disproved the Eller Parties' allegation that they suffered harm that was not eliminated by Collazo's remedial action. Collazo also contends that the denial-of-discharge claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief should be granted. This argument is persuasive for the reasons set forth below.

In their Ninth Claim for Relief, the Eller Parties assert that

Collazo should be denied discharge under section 727(a)(2), because he concealed the Note and the indemnity claim from the court, the trustee, and creditors. This claim should be dismissed, because it does not allege facts that amount to concealment of either the Note or the indemnity claim. The amended complaint does not allege that the liability represented by the Note existed before the Note was issued on July 10, 2013, or that Collazo claimed any right to indemnity before he issued the Note. Collazo disclosed both the Note and his claim for indemnity when he filed the Indemnity Action on July 23, 2013. The Eller Parties' brief acknowledges that their counsel received a copy of the complaint in the Indemnity Action the next day. Response to Motion for Summary Judgment and Motion to Dismiss Amended Complaint at 6. The amended complaint does not allege that between the creation of the Note and its disclosure Collazo filed any papers or made any statement that called upon him to list his assets or liabilities and in which he failed to disclose the Note or the claim for indemnity. The short delay between the issuance of the Note and the filing of a claim for indemnity based on that Note does not amount to concealment.

In their Tenth Claim for Relief, the Eller Parties assert that Collazo should be denied discharge under section 727(a)(4), because he made a false oath, submitted a false claim, and attempted to obtain an advantage fraudulently. Each of these contentions is based on Collazo's representation and warranty in the Settlement Agreement that he held no interest in the Residence. This claim should be dismissed, because the amended complaint does not allege that Collazo in fact did have an interest in the Residence. The fact that Mariner and the Trustee asserted that Collazo had an

interest does not make it so, or constitute the necessary allegation in the complaint. Nor should the court infer from the fact that Collazo gave his parents the Note that he had an interest in the Residence. It is entirely plausible that he gave his parents the Note to compensate them for transferring the Residence precisely because he did not hold any interest in the Residence.

In their Eleventh Claim for Relief, the Eller Parties assert that Collazo should be denied discharge under section 727(a)(5), because he "failed to explain satisfactorily the loss of assets or deficiency of assets to meet the Debtor's liabilities that the Debtor suffered when he issued the $1.3MM Note and failed to disclose said $1.3MM Note. . . ." Amended Complaint, ¶ 66. This claim makes no sense and should be dismissed. There is no allegation that the Note represents a liability that existed before the parents transferred the Residence in late June 2013.

There is no reason the Eller Parties should not be afforded the opportunity to amend their complaint to attempt to cure the deficiencies noted above. The denial-of-discharge claims based on the issuance of the Note, however, may be very difficult to prove. The acts alleged do not constitute glaring badges of fraud from which the required intent is easy to infer.

**CONCLUSION**

Collazo's motion for summary judgment is granted as follows: the court determines that through the Settlement Agreement the Eller Parties released Collazo personally from all pre-settlement claims other than the $3 million claim stipulated to be excepted from discharge; the unsecured claims against the estate that were retained under the Settlement Agreement were not preserved as

personal liabilities of Collazo that the Eller Parties can enforce against Collazo if he fails to receive a discharge. Collazo's motion for summary judgment is denied with respect to the denial-of-discharge claims. Collazo's motion to dismiss the denial-of-discharge claims is granted, and the Eller Parties are granted leave to amend those claims by March 31, 2014.

**\*\*END OF MEMORANDUM DECISION\*\***

| | |
|---|---|
| 1 | **Court Service List** |
| 2 | |
| 3 | Carlos M. Collazo |
| | 357 Fremont Avenue |
| 4 | Los Altos, CA 94020 |
| 5 | Gibson, Dunn & Crutcher LLP |
| | ATTN: Thad Davis, Esq. |
| 6 | 555 Mission Street, Suite 3000 |
| | San Francisco, CA 94105 |
| 7 | |